# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

                v.                              Criminal Action No. 2:13CR34

**ERIC SCOTT PENNINGTON,**
        **Defendant.**

## ORDER/OPINION REGARDING PLEA OF GUILTY

This matter has been referred to the undersigned Magistrate Judge by the District Court for purposes of conducting proceedings pursuant to Federal Rule of Criminal Procedure 11.

Defendant, Eric Scott Pennington, in person and by counsel, L. Richard Walker, appeared before me on December 2, 2013. The Government appeared by Stephen Warner, its Assistant United States Attorney.

The Court determined that Defendant was prepared to enter a plea of "Guilty" to Count 33 of the Indictment.

The Court proceeded with the Rule 11 proceeding by placing Defendant under oath.

The Court determined that Defendant's plea was pursuant to a written plea agreement, and asked the Government to tender the original to the Court. The Court asked counsel for the Government to summarize the written Plea Agreement. Defendant stated that the agreement as summarized by counsel for the Government was correct and complied with his understanding of the agreement. The Court **ORDERED** the written Plea Agreement filed.

The Court inquired of Defendant concerning his understanding of his right to have an Article III Judge hear the entry of his guilty plea and his understanding of the difference between an Article III Judge and a Magistrate Judge. Defendant stated he voluntarily waived his right to have an Article III Judge hear and accept his plea and voluntarily consented to the undersigned Magistrate

Judge hearing and accepting his plea, and tendered to the Court a written Waiver of Article III Judge and Consent To Enter Guilty Plea Before Magistrate Judge, which waiver and consent was signed by Defendant and countersigned by Defendant's counsel and was concurred in by the signature of the Assistant United States Attorney appearing.

Upon consideration of the sworn testimony of Defendant, as well as the representations of his counsel and the representations of the Government, the Court finds that the oral and written waiver of Article III Judge and consent to enter guilty plea before a Magistrate Judge was freely and voluntarily given and the written waiver and consent was freely and voluntarily executed by Defendant, Eric Scott Pennington, only after having had his rights fully explained to him and having a full understanding of those rights through consultation with his counsel, as well as through questioning by the Court. The Court **ORDERED** the written Waiver and Consent to Enter Guilty Plea before a Magistrate Judge filed and made part of the record.

The Court inquired whether the current agreement was the only offer made to Defendant, to which both counsel replied that it was.

The Court reviewed with Defendant Count 33 of the Indictment and the elements the government would have to prove, charging him with possession of pseudoephedrine to be used in the manufacture of methamphetamine.

The Court reviewed with Defendant the statutory penalties applicable to an individual adjudicated guilty of the felony charge contained in Count 33 of the Indictment, the impact of the sentencing guidelines on sentencing in general, and inquired of Defendant as to his competency to proceed with the plea hearing. From said review the undersigned Magistrate Judge determined Defendant understood the nature of the charge pending against him and understood the possible statutory maximum sentence which could be imposed upon his conviction or adjudication of guilty

on that charge was imprisonment for a term of not more than twenty (20) years; understood that a fine of not more than $250,000.00 could be imposed; understood that both fine and imprisonment could be imposed; understood he would be subject to a period of up to three (3) years of supervised release; and understood the Court would impose a special mandatory assessment of $100.00 for the felony conviction payable on or before the date of sentencing. He also understood that his sentence could be increased if he had a prior firearm offense, violent felony conviction, or prior drug conviction. He also understood he might be required by the Court to pay the costs of his incarceration and supervised release.

The undersigned also reviewed with Defendant his conditional waiver of appellate rights as follows:

Ct:   Did you discuss with Mr. Walker that you have the right to appeal any conviction and any sentence to the Fourth Circuit Court of Appeals?

Def:  Yes, sir.

Ct:   Now you have to give notice your intent to appeal within 14 days of the date you're sentenced; but you have the right to appeal that sentence. You understand that?

Def:  Yes, sir.

Ct:   Did you also understand that under another statute, we call it 28 USC section 2255, you may collaterally attack– that means indirectly attack– your sentence and how it's being carried out, by filing a habeas corpus-type motion. Did you understand that you could file a habeas corpus motion?

Def:  I don't understand that one.

Ct: Ok. It's a fancy word that means it's an indirect or collateral challenge to the sentence and how the sentence is being carried out. And in some instances people use it to challenge their convictions also. You understand that?

Def: Yes, sir.

Ct: Now, under your written plea agreement, and I'm going to refer to paragraph number 13 – if the district judge's actual sentence is the same as a guideline sentence that has a total offense level of 26 or lower, you're giving up your right to appeal and you're giving up your right to file a habeas corpus challenging your sentence and how it's being carried out. Do you understand that?

Def: Yes, sir.

Ct: And that's what you intended to do by signing the agreement with paragraph 13 it?

Def: Yes, sir.

Ct: And Mr. Walker explained in great detail, did he, paragraph 13 to you?

Def: Yes, sir.

From the foregoing colloquy the undersigned determined that Defendant understood his appellate rights and knowingly gave up those rights pursuant to the condition contained in the written plea bargain agreement.

The undersigned Magistrate Judge further examined Defendant relative to his knowledgeable and voluntary execution of the written plea bargain agreement signed by him on November 22, 2013, 2013, and determined the entry into said written plea bargain agreement was both knowledgeable and voluntary on the part of Defendant. The undersigned inquired of Defendant regarding his understanding of the written plea agreement. Defendant stated he understood the terms of the written plea agreement and also stated that it contained the whole of his agreement with the Government and

no promises or representations were made to him by the Government other than those terms contained in the written plea agreement. Upon inquiry, Defendant also stated that no one, including his counsel had promised him any particular sentence.

The undersigned Magistrate Judge further inquired of Defendant, his counsel, and the Government as to the non-binding recommendations and stipulations contained in the written plea bargain agreement and determined that Defendant understood, with respect to the plea bargain agreement and to Defendant's entry of a plea of guilty to the felony charge contained in Count 33 of the Indictment, the undersigned Magistrate Judge would write the subject Order and would further order a pre-sentence investigation report be prepared by the probation officer attending the District Court. The undersigned advised the Defendant that the District Judge would adjudicate the Defendant guilty of the felony charged under Count 33 of the Indictment. Only after the District Court had an opportunity to review the pre-sentence investigation report, would the District Court make a determination as to whether to accept or reject any recommendation or stipulation contained within the plea agreement or pre-sentence report. The undersigned reiterated to the Defendant that the District Judge may not agree with the recommendations or stipulations contained in the written agreement. The undersigned Magistrate Judge further advised Defendant, in accord with Federal Rule of Criminal Procedure 11, that in the event the District Court Judge refused to follow the non-binding recommendations or stipulations contained in the written plea agreement and/or sentenced him to a sentence which was different from that which he expected, he would not be permitted to withdraw his guilty plea.

The Court also advised Defendant regarding the United States' agreement to recommend that the Court's sentencing Order include a recommendation that Defendant participate in the Bureau of Prisons RDAP. The Court advised that even if the United States did make that recommendation, the

Court was not bound to follow it, and that even if the Court did make that recommendation the Bureau of Prisons was not bound to follow that recommendation. Defendant acknowledged his understanding and Defendant maintained his desire to have his plea of guilty accepted.

Defendant in particular understood that the parties stipulated that Defendant's case involved the "shake and bake" method of manufacturing methamphetamine and that this method is highly dangerous. The parties do not agree, however, whether the facts of this case are extraordinary enough to trigger the application of the "risk" enhancement in Guideline 2D1.1(b)(13), and that decision will be left to the District Judge, without a jury.

Defendant also understood that his actual sentence could not be calculated until after a pre-sentence report was prepared and a sentencing hearing conducted. The undersigned also advised, and Defendant stated that he understood, that the Sentencing Guidelines are no longer mandatory, and that, even if the District Judge did not follow the Sentencing Guidelines or sentenced him to a higher sentence than he expected, he would not have a right to withdraw his guilty plea. Defendant also understood that if his counsel had shown him the guidelines, how they work, and what his sentence or range of imprisonment may be, that is not a guarantee or promise that the district judge would agree and sentence him to that term or range of imprisonment.

Defendant further understood there was no parole in the federal system, although he may be able to earn institutional good time, and that good time was not controlled by the Court, but by the Federal Bureau of Prisons.

Defendant stated he was a citizen of the United States.

Thereupon, Defendant, Eric Scott Pennington, with the consent of his counsel, L. Richard Walker, proceeded to enter a verbal plea of **GUILTY** to the felony charge contained in Count 33 of the Indictment.

The Court would at this point in the hearing hear the testimony of a Government witness to provide an independent basis for the guilty plea. In this case the parties had agreed to the offer of the independent basis by Government proffer. Counsel for Defendant advised that he had agreed to this procedure in this particular case because it was so straightforward. He represented to the Court that Defendant was an addict. He had not been cooking meth, but had purchased pseudoephedrine for others in return for meth.

The AUSA then proffered that the Tucker County Sheriff's Department and U.S. Forest Service was investigating the manufacture of methamphetamine. The investigation involved interviews and review of NPLEX to determine who had been purchasing pseudoephedrine for use in making methamphetamine. Counts 30-36 of the Indictment reflect purchases of pseudoephedrine purchased by Defendant. Defendant was interviewed on June 6, 2013, by Officers Frashure and Smithson. Defendant told them that in Spring 2013, "Shane" and "Paco" were cooking meth. They had a Gatorade bottle in a pot of water, and another with a hose in it. Paco put red lightning in a bottle with table salt, and hoses in another bottle and it started bubbling and made dope. Defendant stated that the smell "took his breath away" and he went outside. Paco used a hair dryer to dry the meth, which was in a coffee filter. They made about a gram on that occasion. Defendant, Paco and Shane all smoked the meth. About a week later he saw Paco and Shane. Paco asked him to get some pills for him, and gave him the money and a ride to the drug store where he bought [pseudoephedrine] pills.

The undersigned finds the government's proffer provides an independent factual basis in support of Defendant's guilty plea.

Upon consideration of all of the above, the undersigned Magistrate Judge finds that Defendant is fully competent and capable of entering an informed plea; Defendant is aware of and

understood his right to have an Article III Judge hear and accept his plea and elected to voluntarily consent to the undersigned United States Magistrate Judge hearing and accepting his plea; Defendant understood the charges against him, not only as to the Indictment as a whole, but in particular as to Count 33 of the Indictment; Defendant understood the consequences of his plea of guilty, in particular the maximum statutory penalty to which he would be exposed; Defendant made a knowing and voluntary plea of guilty to Count 33 of the Indictment; and Defendant's plea is independently supported by the Government's proffer, which provides, beyond a reasonable doubt, proof of each of the essential elements of the charge to which Defendant has pled guilty.

The undersigned Magistrate Judge therefore **ACCEPTS** Defendant's plea of guilty to the felony charge contained Count 33 of the Indictment and recommends he be adjudged guilty on said charge as contained in Count 33 of the Indictment and have sentence imposed accordingly.

The undersigned further directs that a pre-sentence investigation report be prepared by the adult probation officer assigned to this case.

Defendant is continued on release under the Conditions of Pretrial Release previously entered by the Court.

The Clerk of the Court is directed to send a copy of this Order to counsel of record.

It is so **ORDERED.**

DATED: December 3, 2013.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE